Good morning, your honors. My name is Leon Rosen. I'm special counsel to the Las Vegas, Nevada, law firm of Ames Bryant-Skutt. I appear here on behalf of the petitioners, Angel and Lucy Bacilio, who just happen to be seated in the front row of your courtroom with their two adorable young children. May I reserve two minutes of my time, your honor? This case involves a deprivation of the most fundamental right to counsel in deportation proceedings. This court has consistently recognized the absolute obligation of an immigration judge to explain carefully to a person faced with the prospect of removal the right to be represented by counsel. This judge did that several times, didn't he? Yes, you have. That's been decided so recently, your honor, that two of our... No, I'm saying this immigration judge did exactly that, didn't he? I beg your pardon? Didn't the immigration judge in this case explain that they had a right to counsel and why it would be advisable to get counsel if they can, why you might want to consult counsel, why you might want to take a year to... He did, but he did not do what the regulation required him to do. H.C.A. 41240.10 requires that a judge have an unrepresented alien state then and there in open court a willingness to proceed. This court in Tawandis and Balthazar has held that that waiver must be an explicit waiver, cannot be implied. What can an immigration judge do if a person appearing before him says, does not get a lawyer and refuses to say that they want to proceed without one? Your honor, it was going to be my parting suggestion to this court, but I think I'll take it out of context, and I think that perhaps the time has come when the court should consider the feasibility of applying the rule of Gideon v. Wainwright to deportation proceedings. Perhaps there should be, in those cases that concern you, where an individual does not have counsel and comes a second time without counsel, there should be a panel of lawyers from which the judge can make an assignment. The consequences of deportation are so evident that there have been, Rio Penas has found it to be a due process violation to proceed without an attorney. In this case, your honors, the Basilios sought cancellation of removal. They were absolutely qualified in every regard. They had more than ten years residence, in one instance now going on 18 and the other 14. They were admittedly of good moral character, and the immigration judge so found. They were totally free of any criminal violations. They own a home. They pay their taxes. The one stumbling block was the requirement in Section 240B of the Immigration and Nationality Act that they prove that their removal would result in extraordinary hardship to a U.S. citizen child. They told the judge that this two-year-old then, a three-year-old, he's now five, I think, suffered from learning disabilities. There was the possibility of some mental retardation. The judge said, if there was proof of that, that he might find otherwise. The only reason he denied them this relief was because the high standards set by the Board of Immigration Appeals in matter of Montreal, where it determined that the removal of the parents of an infant child and the removal of an infant U.S. citizen child did not constitute the extraordinary hardship envisioned by Congress. That was the finding in Montreal. Now, they had to prove that. What should any decent lawyer have done under those circumstances, Your Honor? I think the answer is obvious. That child on that claim should have been evaluated by a professional. That professional should have testified. The judge then should have had the opportunity to know, weigh the evidence, see whether there did exist that extraordinary hardship. He didn't do that. The finding, I mean, the mandate of the regulation is absolute. It isn't discretionary. I recognize that there is a conflict in management of the calendar. That the judge cannot go on forever. I understand that. But this was not the case here. They were told to come with an attorney. They said that they had consulted an attorney but not yet retained one. Then he decided the case. He was very kind. He was very protective of their rights. I'm not claiming in any way that except for not recognizing their right to counsel, that he otherwise violated their rights. He didn't do that. But after he decided the case, then for the first time they got counseled. Whether they got a good attorney or not, I don't know, but they got me. And it was then that I recognized that there was something wrong. The regulation mandated an explicit waiver. This court, before the two most recent cases in Ayumara several years ago, made that determination that the waiver must be explicit. And there was no explicit waiver. So I appealed to the Board of Immigration Appeals. Now, one might ask, why didn't I do something else? Why didn't I move to reopen the proceedings? The answer, Your Honors, is because the regulation requires that a motion to reopen be filed within 90 days. Some of that time was lost before they came there, but that was not what was critical. What was critical is if there was a bias, if there was a prejudice, if in some way they were harmed by lack of counsel, then it was because this child had the needs that they told the judge he had. And the way to determine that was to have him evaluated. And it wasn't possible to get the evaluation from my own personal information, to get that evaluation within the 90 days. So we appealed to the Board of Immigration Appeals. I was reasonably confident that the regulation, as plain as it is, that the judge must extract an explicit waiver, I was certain that the Board would reverse it. But I totally miscalculated the effect of the Board's decision in Monroy Hall. And so we waited, and the Board dismissed the appeal, and that's why we're here, Your Honors. And I respectfully suggest to you that the right to counsel, if it isn't a Sixth Amendment right, then it may be a Fifth Amendment right deriving through the Due Process Clause. There is no question in my mind that had they been represented, the result would have been different, and they should have an opportunity for that. And I ask this Court to remand the case to the Board of Immigration Appeals for a de novo hearing at which they will be entitled to be represented by counsel. Thank you. Thank you, Mr. Rosen. Good morning, Your Honors. Appearing on behalf of the Attorney General, Barry Pettinato. Under the facts of this case, the immigration judge clearly fulfilled his obligations under ACFR 1240.10. Between the period of January 28, 2000, that's when they first, the petitioners first appeared in front of the immigration judge in Los Angeles, until their final hearing which took place in Las Vegas some 13 months later on September 10. They were advised of their right to counsel, specifically during that 13-month period of time, they were advised three times in their own hearings. But then there was also the collateral issue. So they were, their son's case was not consolidated with their's case until later on, until the cases all went to Las Vegas. The mother appeared on behalf of the sons with the son at his individual hearings, and she was again advised of the right to counsel during the son's three hearings in the country. The question isn't really advice of the right to counsel so much as it is whether a waiver was elicited. I agree with you, Your Honor. I think the Court can easily set aside the first part of the regulation because the record is very clear that they were explicitly advised many, many times of their right to counsel. So the issue then becomes were, did the immigration judge comply with the second part of the regulation in that asking them to state whether they wanted to be represented by counsel? Well, if the Court wants to just take a simple literal reading of that statute, then the answer is yes. The judge complied because on January 28, 2000, at their first hearing in Los Angeles, the immigration judge, in fact, said to them, specifically said, which do you prefer? He got an ambiguous answer. He did get an ambiguous answer. And he continued it to give them time to make a decision. And the question is, did he re-ask the question and get an unambiguous answer after that? I think you've got it exactly right, Your Honor. I mean, he had gotten an explicit answer, I mean, a definitive answer the first time around. I think that would be the end of the inquiry. The problem was the husband said yes, the wife said no. It was a concern. I understand that. All my question is, after that, did he ask a clear question and get a clear answer? Right. I think if you're asking, really, did he ask that question again so definitively, the answer is no. But I think what you have to do in this case is look at the facts over the next 13 months of what happened in this case and determine, as I think the decision, that Judge Hawkins authored to Wadriss seems to indicate that you sort of look at the record as a whole. That's my reading of the case anyways. You have to look at the administrative record as a whole to determine whether there was a knowing involuntary waiver. And in this case, you have a delay of 13 months between impairing many, many times over and over again in front of immigration judges being advised of the right to counsel. But on two specific occasions, they were warned that if they didn't appear down the road with counsel, that they would be required to represent themselves. That happened in Los Angeles at the September 28th hearing, and then it happened later on at the June 12th hearing in Las Vegas. And that, critically, was the hearing just before they appeared in September for the merits hearing. So the immigration judges are warning them in Los Angeles and in Las Vegas that if they don't appear with counsel, at some point they'll have to represent themselves. But I think really the strongest evidence that they knowingly and willingly waived their right to counsel, when they appeared at their merits hearing on September 10th of 2001, they came fully prepared to represent themselves. Both the husband and wife testified on their behalf, and they brought along three witnesses with them, fully prepared. And if you look at the record, it's a very ‑‑ it's extensive testimony taken in regard to the claim of cancellation of removal. The record is fully developed. As the other side has conceded, the judge was very mindful and very careful, explained the requirements for cancellation, was very careful to protect them, given that they were pro se, and essentially gave them the fairest hearing I think they could have had. And I think that's really the strongest evidence you can point to, is that they had been fully warned that they would have to represent themselves at some point. And I think really the critical thing in this case, these cases are, at some point immigration judges are required to go forward with hearings. And I think this is not a case like Tawadros, where they come to court and they're represented by counsel. The attorney has a conflict and can't represent them in the afternoon and withdraws, and they're forced to go forward on their own. This was a case where, over these 18 months, they never had counsel, and they were repeatedly advised that they would have to proceed at some point with counsel. So I think the answer to that ‑‑ Why shouldn't we treat this like a Miranda waiver? In what way? And require an explicit waiver of the right to counsel and an acknowledgement that they're going to represent themselves. Well, no court has ever gone ‑‑ I mean, this Court has certainly suggested that there should be an explicit waiver. I think that's ‑‑ but no other court has ever held that it has to be an explicit waiver. But I think in some ways that's an unrealistic expectation, because ‑‑ It's a clear, bright-line rule, right? It would be. I mean, if that ‑‑ in an ideal world, I think that would be wonderful. But in the reality of how these immigration proceedings happen, I don't think that's realistic, because frequently what happens is the aliens ‑‑ How hard is it for an I.J. to say, okay, you're here, you don't have counsel, if you want to proceed, here's the form. Right. There is no such regular ‑‑ I mean, we only have the existing regulation. I would agree with Your Honor that it might be an easy solution if the board at some point decided to do that. But we wouldn't be inventing the rule if the reg already has it. Well, it says ‑‑ I agree with your point that what if there's no answer? Right. Over a long period of time. That creates a real problem. It's unusual. I don't know that I've ever read a regulation that says require the respondent to state then and there at the merits hearing whether or not ‑‑ And there's been really ‑‑ no court has ever really interpreted this regulation. Previous ‑‑ the Second Circuit interpreted the predecessor statute and essentially came to the conclusion that at some point immigration judges have to go forward, and an alien can't delay his hearing forever. If I could just speak to the prejudice issue. Well, what does the phrase then and there in the regulation mean? You would think it would literally mean, Your Honor, I can't fight that. I can't contest that. It would indicate like what the immigration judge did the first time around at that Los Angeles hearing when he said, tell me, do you want to be represented by yourself? Do you want to represent yourself or do you want to have counsel? That seems to be what's required, and I think that's what the ‑‑ literally that's what the immigration judge did that first time around. We hold petitioner counsel pretty strictly to the rule that if there's a change in counsel, there's a form that has to be filled out. We hold petitioners pretty carefully to the rule that if there's a change of address, they've got to do the appropriate work. And this sounds to me like it's just not that difficult for an immigration judge to say, if you want to go forward, here's the form. I've explained your rights to you. If you want to go forward, here's the form. I can only say, Your Honor, at this point, the Executive Office of Immigration Review has not implemented any such form process where they would essentially be signing off on it. I think in an ideal world, then you would have the definitive answer. But as a practical matter, what happens in these cases is they frequently drag on for a very long time. Aliens consult counsel, come back, say they've consulted counsel and whatnot, and eventually immigration judges are just forced to go forward. My time is getting close, and I just want to speak to the issue of prejudice because essentially what they're saying is, have they been advised of this right to counsel in an explicit fashion, then according to their brief, they say they would have been deprived of it. The advice of competent counsel, and if they had gotten that advice, they would have then had their son evaluated. Well, you have to keep in mind that at the time of this, the son was only two and a half years old, and these later special education needs became much clearer when he was five years old. They weren't so clear. There was some indication they had said he was slow in developing his speech and whatnot, but it wasn't really all that clear. But if their argument is that competent counsel would have had this child evaluated, they consulted an attorney several times along the way, and significantly when this case was pending an appeal in front of the Board of Immigration Appeals, they were represented by current counsel, Mr. Rosen. At no time while he was representing them in front of the Board of Immigration did he have the child evaluated, tell the Petitioners to have the child evaluated. At least, I don't know what he said, but nothing's in the record that indicates that he ever did. And while it was pending, they could have had the child evaluated and had a new evaluation and then moved to have the case remanded in light of new evidence. That never happened. And then after the Board came out with its decision in June of 2003, they had 30 days to make a motion to reopen based on new evidence or anything. No new evaluation was done. The evidence that they have attached to their brief, which I've told the Court they can't consider, the psychological evaluation in this case wasn't even done until January or February of 2004, some 30 months after the hearing in front of the immigration judge. So I think that it's pure speculation and conjecture that if they had obtained competent counsel, that they would have been given that advice. Thank you. Thank you, Mr. Bernstein. Mr. Rosen. As recently as less than one month ago in Balthazar, this court observed that immigration laws have been termed second only to the Internal Revenue Code in complexity and that a lawyer is often the only person who could thread the labyrinth, citing, as it did, Castro or Ryan. And the court also recognized that in putting together the proof of extraordinary hardship required under Section 240B, required the services of an attorney who could put that together. At 50 years of practice at the immigration bar, many times I have seen judges hand to an unrepresented alien a list of social service agencies that might provide legal counsel. Unfortunately, less than one or two percent of the times have those organizations had the ability to do it. They didn't have the staff. They didn't have the funds. They had an overwhelming caseload. So to attempt to satisfy the need to counsel, the right to counsel, by handing an unrepresented alien a list, go to see them, the Salvation Army, the Human Rights Society, the Catholic Charities. It doesn't work. It just doesn't happen. Your Honors, I respectfully suggest, thank you very much for your time. Thank you, Mr. Rosen. Counsel. The matter just argued will be submitted. And we'll next hear argument in Carthage v. Ashcroft.
judges: Canby, Rymer, Hawkins